Call 9-1-1, 31-36, Whittmanhart v. CA, Inc. Good morning, Your Honors. My name is Maura McIntyre and I represent Plaintiff Appellant Whittmanhart. The only issue before this Court today is whether the trial court abused its discretion by dismissing Whittmanhart's suit against defendants pursuant to Section 2619A3 because there was another action pending between the same parties for the same cause. The answer, Your Honors, is yes, for the trial court dismissed Whittmanhart's Illinois complaint without due consideration of well-recognized principles of Illinois law articulated by the Illinois Supreme Court and A.E. Staley Manufacturing Company  First, the circuit court ignored that the parties' dispute had a legitimate and substantial relationship to the Illinois form. Second, the circuit court failed to hold defendants to their burden of establishing additional grounds demonstrating why the Illinois action could not proceed. This is a case about a Delaware corporation with its principal place of business in New York coming into Illinois to sell tracking and invoicing software to Whittmanhart, an Illinois corporation. The defendants negotiated the terms of the licensing agreement and a statement of work at issuing this suit in Illinois. They dispatched numerous employees and other personnel to Whittmanhart's Illinois offices to integrate the software with Whittmanhart's operating systems. But after numerous delays, missed deadlines, and failed attempts to deliver what they promised, Whittmanhart finally had to pull the plug on the project. Months later, however, defendants issued a lump-sum invoice to Whittmanhart demanding an excess. Let's just talk about the procedural problem. Correct, yes. You say the trial court must be reversed because he did not engage in the appropriate analysis. Correct. So in the Zurich case, this is more recent than the Staley case, but the Supreme Court once again sets out what the analysis should be, right? Correct. So does it matter if the trial court does not take off each one of these standards that the case sets out? No, I think that the first step in the analysis is whether or not there is a legitimate and substantial relationship between the suit to the parties dispute in the Illinois forum. When that standard is met, then the burden shifts to the defendants to determine whether or not there are additional grounds as to why the Illinois action should not proceed. And unfortunately in this case, the court did not hold defendants to their burden. I will concede that the Kellerman factors are just a guideline. They're not dispositive. The court does not necessarily need to consider each and every one of those factors. And indeed, in certain cases, not all are applicable. But in this instance, first of all, Whitman Hart clearly established that this is an Illinois dispute. Everything that happened between the parties happened in Illinois. And despite this fact, then the court sort of overlooked that factor entirely and then immediately sort of just acknowledged those four Kellerman factors and summarily concluded that they weighed in favor of dismissal. Does that matter that the court was summary about that? Or can we just say, okay, this is what the standards are. Here's what the facts show. Can we do that? I think that the crux of the analysis, first and foremost, is whether or not there's a legitimate and substantial relationship. Whether he was right or wrong in how he came out on those factors, I disagree with him. But I think the bigger issue is, one, that he didn't recognize legitimate and substantial relationship between this suit and the Illinois forum and then summarily dismissed it by acknowledging those factors. And indeed, the situation here is different. It's not that he just ignored those factors. He actually indicated in his order that he gave them careful consideration and then decided, in contrast to any reasonable reading of the facts, that those factors all weighed in favor of dismissal. Here, Staley combined our binding precedent. As Staley demonstrates, the first, as we've said, the first step is to determine whether there's a legitimate and substantial connection to the Illinois forum. Here, there's no question that the party's dispute has legitimate and substantial connection to Illinois. Everything happened here. The defendants sold the product in Illinois, the defendants attempted to integrate the product in Illinois, and the defendants ultimately failed to deliver what they promised to Whitman Hart's Illinois offices. Furthermore, Whitman Hart is an Illinois resident who has the right to litigate his claims in Illinois. As both Staley and Combined hold, an Illinois resident with a case pending in Illinois should not have to file a counterclaim in a foreign jurisdiction just to protect its interests. In Combined, the first … New York and Illinois both have, neither state has a compulsory counterclaim rule. Is that correct? Correct. In Combined, the first district correctly found that Staley was controlling and reversed the trial court's dismissal of the plaintiff's Illinois action. That is exactly what Whitman Hart is asking this court to do today. Specifically … What do you do about the stipulation, the agreement to proceed in New York and the fact that you have to file a counterclaim there and the discovery is ongoing there, I think. How does that fit in though? Well, first of all, at the time that the trial court entered its order, which we're appealing today, we had not stipulated to anything. In fact, as you are aware from the record, the defendants had filed three separate suits in New York. The first had been dismissed and was not subject to appeal. The second had been dismissed for lack of personal jurisdiction and was on appeal. And the third, which was filed while the second was still technically pending, had stayed pending appeal of the second suit. So then you have an agreement. After the suit was dismissed. And you're litigating all of this in New York. So where does that fit? What do we do with that? Well, the whole purpose, the entire purpose of a section 261983 analysis is to determine whether … So let's say we reverse. Correct. What happens then? Whitman Hart is able to bring its claims in the form of its choosing, which is its right as plaintiff. What you're going to have here is you're going to raise the judgment. They're going to prosecute New York because New York is going to stay their action. And we're going to prosecute here, and we're going to have a race to judgment. And whichever one … I think there's a serious question as to whether a New York judgment, based on the claims that are pending, would be raised judicatum to the broader Illinois case that's been filed. But I think clearly the Illinois case would be raised judicatum to the New York case. Correct. The Illinois case would be raised judicatum to the New York case. The New York case is not as clear because it really depends on how the court comes out. As we've demonstrated in our brief, the Illinois suit really encompasses the broader and largely dispositive litigation between the two parties. And as many of the cases cited by both plaintiffs and defendants in this case … How is the New York case different? The New York … Or are the two cases different? Sure. The New York case is only asking for a resolution of the parties' rights and obligations under the EULA and the SEL. They're specifically suing Whitman Heart to recover funds that they're allegedly owed for services that they provided. Services rendered later and you're suing … And we're suing … … to comply with the underlying contract. In addition, we're also seeking a declaration … But you already filed that in New York, right? You filed the counterclaim in New York. We did file the … And the case that you have here is pending in New York. Yes, that is correct. But the reason that we filed … So what do we do with it? I mean, the whole case is in New York now. I think that the whole purpose is to look at the facts and circumstances of this particular case and to say that this is an Illinois dispute. Whether or not the New York courts are babysitting it while, you know, while this is on appeal … Is your stipulation, is your agreement contingent on what happens in this court? If we reverse, then what happens? Did you … I mean, you entered an agreement to proceed in New York. Correct. If you go … Is there … Both actions will be … … in that agreement? No, it is not. Why? Both actions, because we didn't stipulate to any factor that we have reserved our right on appeal since day one. That's my question. You reserved your right on … In the agreement that you came to proceed … Oh, I'm sorry. … and filed a counterclaim in New York, that's all contingent on somehow … No, I'm sorry. I'm sorry. You misunderstood me. I meant that we've reserved our right on appeal in Illinois from day one. We've … The case in New York, yes, is proceeding. But the entire purpose of a section 26193 analysis is to determine whether both actions … Wait a minute. … should proceed. Wait a second. What was the date of the judgment that was entered dismissing the Illinois action pursuant to 2619? October 14, 2009. What was the date of the filing of your answer and the assertion of the affirmative defenses in the New York action? I don't have the exact date in front of me, but I know it was in November of 2009. November 24, 2009. Correct. It wasn't even filed until after this judgment was entered. How in heaven's name can we consider it? It wasn't in the record when the trial judge made his decision. It's irrelevant to the question. What you have on file in New York and that you have filed in New York after the date of October 14, 2009 is not available for our consideration. Correct, Your Honor. It doesn't make any difference. We don't know about it. Correct. No matter who tells us about it. We don't know about it. It's not in the record. I appreciate that, Your Honor. That is correct. Yes. It was not under consideration and at the time that the trial court's decision was rendered, none of the actions in New York could proceed. So, you know, he's willing to, the trial court dismissed our Illinois action, which is, you know, the most legitimate, has a legitimate and substantial connection and encompasses the broader dispute between the two parties, despite the fact that none of the actions which were relied on for purposes of the motion could actually proceed. Okay. Furthermore, the trial court abused its discretion in failing to hold defendants to the burden of establishing additional grounds demonstrating why the action could not proceed in Illinois as Staley and other precedent instruct. Instead, as we've discussed, the court addressed the Kalerman factors in a completely artificial way and ignored the entire purpose of the analysis, which is to determine whether both actions should proceed. Why don't you talk about the analysis? Are you going to go through the analysis? Yes. Okay. So the first factor is comedy, and comedy is, there's four factors to consider. Comedy, two, prevention of multiplicity, vexation and harassment, three, likelihood of obtaining complete relief in a foreign jurisdiction, and four, the res judicata effect of a foreign judgment in a local forum. Comedy is defined as giving respect to the laws and judicial decisions of other jurisdictions. As we've already discussed, at the time the court entered its order in dismissing Whitman-Hart's complaints, none of the New York actions could proceed. Thus, this factor did not in any way favor dismissal. Further, the third New York action, as we've discussed, is currently only in the preliminary stages of litigation, but as Justice Hoffman indicated, that really isn't for this court's consideration. Two, the prevention of multiplicity, vexation and harassment. The entire purpose of this inquiry is to determine whether or not two actions should proceed. Obviously, there will always be a multiplicity of actions if we're allowing both to proceed. However, here, Whitman-Hart filed one suit in the only forum with any substantial connection to the party's dispute. Defendants filed three suits in New York in a forum with no substantial connection. So if this factor counts at all, it should cut against defendants. Third, the likelihood of obtaining complete relief in a forum. Is there any evidence in this record at all that it was filed for purposes of vexation or harassment? The only evidence that I would point to, Your Honor, is that they filed their second New York action on December 4th, the same day that we filed our Illinois action. You filed earlier, actually. We filed our, they filed their, we sent a letter on December 3rd to the New York Federal Court and indicated that there was no diversity of citizenship, so the court had no subject matter jurisdiction. The next day, before the court had actually dismissed that case, they moved immediately to file suit in New York State Court, while this first action was still technically pending. They filed an action in New York on December 3rd, 2008, at 2.01 p.m. Eastern Standard Time. No, December the 4th, Your Honor. Are you sure it's the 4th? Yeah. December the 3rd was the day that Whitman Hart sent the letter to the Federal Court indicating that there was no subject matter jurisdiction. When did you file? We filed on December 4th as well, yes. You filed at 3.55 p.m. Central Standard? Correct. As Staley and many of the other cases mandate, this is not, the purpose of this section is not to incite a foot race to the courthouse. That really has no bearing on the analysis at all. The point, the bigger issue is that New York, the first New York action had not been dismissed on December 4th. The Court had just been advised of the fact that there was no subject matter jurisdiction. The actual order was not entered until October 9th. Finally, in terms of the third factor, likelihood of obtaining complete relief in a foreign jurisdiction, the Court's conclusion that Whitman Hart can bring a breach of contract claim as a counterclaim contradicts Illinois Supreme Court and First District precedent in Staley and combined. Whitman Hart, as we've discussed, is an Illinois resident whose claims have a legitimate and substantial relationship to Illinois, and it should not have to litigate its claims in a foreign jurisdiction. Thus, this factor clearly weighs against dismissal. And finally, the res judicata effect of the foreign judgment in a local forum, which we've sort of alluded to, basically it sort of depends on the outcome in New York. If, depending on how the Court decides plaintiff's claims or plaintiff's claims in the New York forum, Whitman Hart might be deprived of its choice of a foreign forum. I would like to reserve two minutes on rebuttal. You may.  You're welcome. May it please the Court. My name is John McEntee. I'm appearing here pro hoc vici, so my name is not on the papers. The purpose of 2619A3 is to avoid duplicative litigation, and the Supreme Court in Staley said that any analysis by the trial court should be directed towards that purpose. The circuit court in this case recognized that it had discretion, unlike the circuit court in Staley. It analyzed the relevant facts, it applied the precedent from this Court, and concluded that the ends of justice would not be served by having two identical actions in two different jurisdictions. Are they identical? If you eliminate the counterclaims that we can't take consideration of because they were not in the record at the time the trial court ruled, are they identical action? One sues for fees owed under the SOW agreement, and another one sues for breach of the underlying agreement. Why do you suggest that? Well, no, there's two things. There's two agreements. The license agreement, the end-user license agreement, and the SOW agreement, the statement of work. Right. Okay. What we were suing for is saying you owe us money. Under what? Under the end-user license agreement and the statement of work. I think you only sued because you said that you were entitled to money under the latter of the two agreements. No, Your Honor. Under the end-user license agreement, we've sued for I think it's $39,000. Statement of work. No, that's not the statement of work, Your Honor. You got an invoice where you claim your own money under the license agreement? Yes, Your Honor. We have a license agreement itself. And you sued. Yes. Go on. So they licensed the product. We have, on two successive one-year periods, they extended that license agreement. And so what we've sued for is for the two extensions, each of which is about $19,000 and change. So it's about $40,000 we're suing on for the end-user license agreement. And the balance is for the amounts due under the statement of work. That's the engineering services. Now, just directing the Court's attention to this end-user license agreement, what counsel indicated was that both these agreements were negotiated and signed in Illinois. In fact, if you look at the end-user license agreement, specifically paragraph 13K, it specifically says that this agreement is entered into in Redwood City, California. Secondly, counsel indicated the software was delivered in Illinois. In fact, the agreement itself, the end-user license agreement, on page 2, there was two methods of delivery. One could be by actually mailing disks or by electronic download from California. They chose electronic download. So, in fact, there was no activity in California relating to the end-user license agreement. Under the statement of work, that's simply for engineering services to supplement their own engineers that were working on the case. Those people were working in CA's headquarters in Ilandia, New York. In this particular case, they have asserted that the trial court abused its discretion. It's a very high burden. In this particular case, the circuit court analyzed the four factors set forth in Staley and Kellerman. And this court in Kapoor v. Fujisawa in 1998 found that a trial court did not abuse its discretion when it didn't consider those factors. And it cited several cases where this court has affirmed dismissals even when the court did not consider those four Kellerman factors. In Kapoor, the court said it should, but it's not required to do so. The appellate relies on three cases. I'd like to discuss those. First, the Staley case. In that court, the court specifically found that the trial court was errant when it found that it had no discretion at all in determining the motion to dismiss. The facts in Staley and this case are distinguishable. In Staley, both parties were residents of Illinois. The contracts provided for the application of Illinois law, and most of the principals were Illinois residents. In this particular case, the CA is headquartered in New York. Its subsidiary, NYCU at the time, was in California. So that's a distinguishing feature. The contracts in this case provide for the application of California law in connection with this end-user license agreement. And with respect to the statement of work, it's New York law. And that's an important factor, because obviously this court is very versed in Illinois law. I, myself, a New York lawyer, have to re-educate myself as to what Illinois law is on this issue. So who is best situated to determine what the correct New York law holding is? It's going to be the New York courts. Again, about 90% of our claim in this case is under the statement of work, which involves the application of New York law. And again, in Staley, most of the people involved were in Illinois. All of our people are outside of Illinois. The statement of facts indicates that, at some point, defense supplied numerous technicians and support staff to Whitman Heart. Here in Illinois, physically in Illinois? No, no. The engineers are coding in New York. That's not to say they didn't come in, and they did come in for meetings in Illinois. But the development work, again, it's just people sitting and altering code. That's done at the CA's headquarter in Iolanda, which is where their development work is done. So then they go and say, defendant dispatched additional personnel to Illinois in several failed attempts to troubleshoot and rectify the problem. So were there – I mean, I understand that you're saying that these are, you know, Internet gurus who understand they can be any place in the world, it doesn't really matter. But is there some physicality in Illinois? There were meetings, Your Honor. No question that there were meetings. Okay, so we came in, and there was meetings about what needed to be done. And so they would come in and have meetings. Okay, but the people that are actually doing the coding are primarily in New York. You know, most – and frankly, a bit of it is actually done offshore in India, frankly. That's where the big development center is. But the interesting part about this is when you're actually doing the coding work, you don't need to be sitting in a hotel room at a client's engagement. You find out what needs to be done, and the code gets modified. You know, the important thing here is that this company knew this software. Whitman Hearts served as a subcontractor for CA and is storing this very software at other client sites. So they knew what this software is when they licensed it from us. And our position is they knew exactly what the software could and could not do. We provide the engineering services that they asked us to do. It initially started out that they were going to do most of it, and we were, you know, just supplementing it. As change orders went on, they said, We're pulling some of our people off of it, and we need some additional resources from you. So that's what, in terms of factory, what happened here. The other point about Staley they talk about is that this – talk about a – whether it's a counterclaim or not and whether the importance of that. You know, in natural gas pipeline and Skipper Marine, both court – this court said that Staley did not set a rule that no action may be dismissed where a party is required to seek relief by way of a counterclaim in another state. So I think respectfully that appellant is misreading Staley, and I would direct the court's attention again to Skipper Marine and to natural gas pipeline. The second action that they rely on is combined insurance case, and that's distinguishable again.  Here, as I pointed out, the end-user license agreement specifically says it's executed in California. Is it Illinois' choice of law provisions in those policies? That's not what we have here. It's Illinois – I'm sorry, it's New York and California law. In that situation, the London action only sought a declaratory judgment. And finally, they cite Zurich v. Baxter. In that particular case, the court found that the dispute there in every way was an Illinois action. Both the plaintiff and the defendant were headquartered in Illinois. The agreements were signed and negotiated in Illinois, and the Illinois law applied to the agreements. Also, the two actions did not involve the same parties. The California action that was at issue had the plaintiff, the defendant, and one insurer. In the Illinois action, it was the plaintiff, the defendant, all the other excess insurers, plus 17 individuals who had been injured, four claimants. So there was not a unity of parties. Can I ask you a question? Sure, Judge. Your suit in New York, as I read this complaint, involves six invoices, and that's all that were sent. Could you tell me which of those invoices were for anything other than work done under the statement of work agreement? Thank you.  Talking about your complaint, Your Honor? Yeah. Any one of the complaints will do, they're all the same. Sure, Judge. If you turn to the record at A00214. Just give me the invoice number, I guess. The actual invoice number? Yeah, which ones are for something other than the statement of work agreement? It's 90048464 and 90062775. Those are under the license agreement? Yes, Your Honor. Okay. And the other four are under the statement of work agreement? That's correct. That's correct, Your Honor. That's fine. Okay. So just to conclude, Your Honor, you know, a reversal in this case would do two things. One, it would likely cause unnecessary expense because of duplicative litigation, but also have a risk of inconsistent verdicts. We have two parallel actions really for the same relief. Well, the instant a judgment is entered by one of these courts and it becomes a final judgment, it becomes res judicata for the other action, doesn't it? Yes, I would say that's probably right, Your Honor. So there's no inconsistent verdicts here. There's just who gets it first. It's the first one to the judgment line, and that ends the other action because then whoever wins the first action is going to plead res judicata in the other action. Well, yes, but, Your Honor, there's also an appeals process, and a court may very well say, well, we're going to let this action continue because we don't know whether that other case should be stayed. Or stay. Pardon? Or stay pending. Sure. No question, Your Honor. It's res judicata because it's reversed. So the fact that you file an appeal does not have any effect on whether it can be pled as res judicata. Yes, Your Honor, but if you go back to what the Supreme Court said in Staley, any analysis has to be to what the goal is of 2619, and it's to avoid duplicative litigation. So to say, well, whoever wins the race, the first, you know, is going to have an advantage, that's not really following what the Supreme Court directed in Staley, avoid duplicative litigation. And so in this particular case, the court did an analysis of the relevant factors. There's discretion. Now, if Your Honor may have decided things differently, that doesn't mean there was an abuse of discretion. And all we're simply saying is here is that the trial court looked at the factors, looked at the law, and rendered a decision. And I respectfully submit that this Court could not reasonably conclude that there was an abuse of discretion. I thank the Court for its time. Counsel, thank you. Rebuttal? Could you address one thing that counsel argued that I'm interested in? The choice of law issue? Yes. Because that is something that we've seen in some of our cases. Correct. What laws are going to apply and so on. Correct. The differences between the two forms and different choices of law. Here, New York law is going to apply, correct? Correct. Isn't that an effect that weighs heavily? Yes, Your Honor. But that is the only factor that weighs in favor of proceeding in New York. Every other factor points to Illinois. This is an Illinois dispute. Defendants came into Illinois, created this entire mess, and then ran back to New York. He also makes the argument, what do you mean they came into Illinois and they ran back? This is all on the Internet, right? This is all software kind of ideas. By defendants' own admission, there were meetings in Illinois. The defendants came to Illinois to integrate the project. The statement of work contemplated performance in Illinois, and that is the entire relation of this dispute. It all stems from events that occurred in Illinois. I would also like to bring up that we never stipulated in that agreement to in any way litigate in New York. As Justice Hoffman indicated, that stipulation was not in the record on October 14, 2009, so should not be considered on appeal. What I would like to point out that what was on the record on October 14, 2009, was the New York court's denial of our motion to dismiss defendants' suit for, among other things, for nonconvenience. If you look closely at that order, which appears in the supplemental appendix on page 24, the court denied our motion to dismiss the third New York action on a technicality. Specifically, the parties entered into a stipulation extending the time in which And when it filed a motion to dismiss on that date, the New York state court held that it's clear from plaintiff's correspondence that defendant and plaintiff agreed to extend the time to answer, but not the time in which to move to dismiss the complaint. And thus, defendant's motion was untimely. We just think that that just shows that had the court actually reached the merits of our argument and looked at whether or not there was a legitimate and substantial connection to New York, that we would not be here today and we would definitely be litigating this suit in Illinois. Secondly, I would just like to point out that Combined and Staley demonstrate that we understand that an abuse of discretion is a high standard that the court, you know, but as Staley and Combined both show, sorry, excuse me, the trial court had to act with due consideration of well-recognized principles of Illinois law. The well-recognized principles of Illinois clearly show that where there's a legitimate and substantial connection, the defendants have to show additional grounds as to why the suit should not proceed in Illinois, and here they did not do that. And finally, I would just like to add that there is no evidence of vexation or harassment on the part of Whitman-Hart. Defendants came into Illinois, created the basis for this lawsuit, and then ran immediately back to New York and filed suit against Whitman-Hart to avoid defending against Whitman-Hart's claims in Illinois. Both the Illinois Supreme Court precedent and fairness itself dictate that Whitman-Hart should be permitted to bring its claims against defendants in Illinois, the only forum with any real connection to the dispute. Despite the fact that another, despite the fact that another action is pending in New York. Thus, we ask that this court reverse the trial court's decision, dismissal of Whitman-Hart's lawsuit. Thank you.